**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Sidney E. NIBLO, et al., Defendants.**

**Civ. A. Nos. 1:92–CV–107–C, 1:92–CV–110–C and 1:92–CV–128–C.**

United States District Court,
N.D. Texas,
Abilene Division.

May 6, 1993.

---

Clifford Charles Ruder, F.D.I.C., Legal Div., USA, Brenda H. Collier, Collier & Associates, Paul Christopher Wolf, F.D.I.C., Dallas, TX, William E. Minkley, F.D.I.C., San Antonio, TX, Roy B. Longacre, Diann D. Waddill, Wagstaff Alvis Stubbeman Seamster & Longacre, Abilene, TX, for F.D.I.C.

W.C. Bratcher, Philip W. Johnson, Crenshaw Dupree & Milam, Lubbock, TX, for Sydney E. Niblo and John A. Wright.

Stephen H. Suttle, McMahon, Surovik Suttle Buhrmann Cobb & Hicks, Abilene, TX, William Franklin (Pete) Baker, McCleskey Harriger Brazill & Graf, Lubbock, TX, for

448

Robert L. Adkins, John R. Cox, Jr. and Luther C. Martin.

Charles Dick Harris, Harris & McBeath, Abilene, TX, for Kenneth L. Burgess, Paul Cain and Byron L. Calcote.

William Franklin (Pete) Baker, McCleskey, Harriger Brazill & Graf, Lubbock, TX, for Ronnie L. Cox.

J. Donald Bowen, Helm Pletcher Hogan Bowen & Saunders, Houston, TX, John Franklin Maner, Maner & Maner, Lubbock, TX, Kenneth Leroy Maxwell, Jr., Moore Dickson Roberts & Ratliff, Inc., Sweetwater, TX, for R. Temple Dickson.

Charles Randall Griggs, Nunn Griggs Sheridan & Conard, Sweetwater, TX, Stephen H. Suttle, McMahon, Surovik Suttle Buhrmann Cobb & Hicks, Abilene, TX, William Franklin (Pete) Baker, McClesky Harriger Brazill & Graf, Lubbock, TX, for Robert W. Hampton, Kevin Hutson, Leslie F. Wootan.

D. Grant Seabolt, Jr., pro se.

## MEMORANDUM OPINION AND ORDER

CUMMINGS, District Judge.

The above-styled and -numbered action is before the Court on Plaintiff's Motion to Strike Affirmative Defenses, filed in this action on March 16, 1993. The court has carefully considered the motion, brief in support, responses and other items of record. Upon consideration, the Court is of the opinion that the motion should be **GRANTED IN PART, DENIED IN PART** in accordance with the discussion below. Accordingly, the Defendants' affirmative defenses of laches, contributory or comparative negligence, contribution (including offset and recoupment), indemnity, assumption of risk, unconstitutionality of exemplary damages, no liability to FDIC as subrogee, ratification by officers and shareholders, good faith reliance on the advice of others, waste of receivership assets, and no approval and confirmation of acquisition of action from receivership court are hereby stricken to the extent discussed below. All other affirmative defenses of the Defendants, to the extent that they are not stricken, shall remain a part of Defendants' pleadings and, as such, remain contested issues for trial.

### OPINION

#### I. Jurisdiction

▮ Jurisdiction is found in this matter because the FDIC is Plaintiff in this action, and thus an agency of the United States,[1] giving rise to United States Plaintiff jurisdiction.[2] Furthermore, all civil suits to which the FDIC is a party in any capacity are deemed to arise under the laws of the United States,[3] giving rise to federal question jurisdiction.[4]

#### II. Standard for Grant of Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure states:

Upon motion made by a party before responding to a pleading, or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or

1. Title 12, Section 1819(b)(1), reads: The Corporation, in any capacity, shall be an agency of the United States for purposes of section 1345 of Title 28, without regard to whether the Corporation commenced the action.

2. "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C.A. § 1345 (West 1976). Section 1819(a) (Fourth), Title 12, United States Code, states: ". . the [Federal Deposit Insurance] Corporation ... shall have power ... [t]o sue and be sued, and complain and defend, in any court of law or equity, State or Federal." 12 U.S.C.A. § 1819(a) (West 1989).

3. "Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A) (West 1989).

4. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (West Supp.1993).

any redundant, immaterial, impertinent or scandalous matter.[5]

Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted.[6] In order to succeed on a motion to strike surplus matter from an answer, it must be shown that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.[7] The court must deny a motion to strike if there is any question of fact or law.[8] The granting of the motion is within the discretion of the court.[9]

### III. Background Facts

This action arises out of the transfer of Texas Bank and Trust Company, Sweetwater, Texas, (TBT) to the State of Texas for liquidation, on July 27, 1989. The State of Texas appointed FDIC as receiver that same day, and the FDIC accepted the receivership pursuant to 12 U.S.C. § 1821(c)(3)(A).[10] FDIC, in its corporate capacity,[11] filed the instant action on July 24, 1992, against certain former officers and directors of TBT, alleging negligence, breach of fiduciary duty, and breach of contract.[12] The complaint alleges that certain acts and/or omissions of the Defendants, with respect to 6 loan transactions, resulted in losses to TBT of at least $3 million. This case is just one in a line of many "second-tier" asset recovery cases brought by the FDIC in its attempt to resolve the nationwide banking crisis.[13]

On March 16, 1993, Plaintiff was granted leave to file its Motion to Strike Defendants' Affirmative Defenses. Plaintiff seeks to strike the numerous affirmative defenses asserted by the Defendants in their answers.

### IV. What Law Governs

■ Plaintiff has brought suit against certain former officers and directors of TBT, claiming negligence and breach of fiduciary duty. These claims are clearly state-law claims. As such, Texas law will govern these actions and any defenses asserted by Defendants, except in such areas where there is a clear preemption by federal law.[14]

---

5. Fed.R.Civ.P. 12(f). While the Plaintiff's motion is not otherwise made in accordance with Rule 12(f), the Court will consider this motion on its own initiative so as to strike insufficient or immaterial items in order to narrow the relevant issues for trial to those which have support in law.

6. *Augustus v. Board of Public Instruction of Escambia County, Florida,* 306 F.2d 862, 868 (5th Cir.1962). *See also* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (1990 and Supp. 1992) and citations therein.

7. *Id.*

8. *Id.*

9. *Id.*

10. "Whenever the authority having supervision of any insured State depository institution ... appoints a conservator or receiver for such institution and tenders appointment to the Corporation, the Corporation may accept such appointment." 12 U.S.C.A. § 1821(c)(3)(A) (West 1989).

11. The FDIC conducts its business in several different capacities: FDIC–Corporation acts as an insurer, regulator, and/or liquidator of assets purchased or assigned from FDIC–Receiver; FDIC–Conservator acts as conservator of any institution placed under FDIC supervision; FDIC–Receiver acts as receiver of any failed institution for which it has been appointed receiver for the purposes of liquidation or winding up the affairs of an insured institution, or for arranging a purchase and assumption transaction.

12. The breach of contract claim has been previously dismissed by this court's order dated March 15, 1993, for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure.

13. The "first tier" of recovery involves actions against the makers of notes or other assets and against collateral pledged, including foreclosure and deficiency judgment proceedings, for satisfaction of the original debt. "Second tier" actions would include tort claims alleging malfeasance by directors, officers, employees, and professional service providers such as attorneys and accountants.

14. Federal law does provide a standard for liability of officers and directors. Title 12, United States Code § 1821(k) states:

A director or officer of an insured depository institution may be held liable for monetary damages in any civil action by, on behalf of, or

*V. The Individual Affirmative Defenses*

A. Limitations (All Defendants)

■ Statute of limitations 'is a defensive matter which must be set forth in the affirmative.[15] The question of limitations was raised in Defendants' Motion to Dismiss or Alternatively, for Summary Judgment, previously considered by this court. An order was entered on March 16, 1993, denying summary judgment to the Defendants on limitations grounds. There are fact issues which relate to the limitations defense which must be borne out at trial.[16] Additionally, the defense of limitations is not one which is invalid as a matter of law against the FDIC. The special limitations periods for the FDIC specify the time in which the FDIC must assert acquired tort claims.[17] This defense should not be stricken.

B. Laches (All Defendants)

■ Laches is an equitable affirmative defense which must be pled and proved by the defendant.[18] It is analogous to statutes of limitation at law.[19] The doctrine of laches prevents parties from seeking equitable relief if they have improperly rested on their claims and the defendants would be prejudiced as a result of the delay.[20] There are three interrelated elements to the defense of laches: 1) delay in asserting a right or claim; 2) that the delay was inexcusable; and 3)

---

at the request or discretion of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution,

(2) acting based upon a suit, claim, or cause of action purchased 'from, assigned by, or otherwise conveyed by such receiver or conservator, or

(3) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance provided under section 1823 of this title,

for *gross negligence*, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. *Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.*

12 U.S.C.A. § 1821(k) (West 1989) (emphasis added). The statute clearly does not preempt any state law causes of action which the FDIC may acquire in the capacity and manner described above.

15. Rule 8(c), Affirmative Defenses, states:

In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license; payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

FED.R.CIV.P. 8(c).

16. The specific facts to be discovered at trial relate to the date on which the causes of action accrued, the application of the adverse domination rule to these claims, and whether such claims expired prior to the appointment of FDIC as receiver.

17. That limitation statute is found at 12 U.S.C. § 1821(d)(14). Subparagraph (A) reads:

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

(ii) in the case of any tort claim, the longer of—

(I) the 3-year period beginning on the date the claim accrues; or

(II) the period applicable under state law.

Subparagraph (B) states:

For the purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C.A. § 1821(d)(14) (West 1989). The above statutes relate to limitations with respect to FDIC as conservator or receiver. However, 12 U.S.C. § 1823(d)(3)(A) states: "With respect to any asset acquired or liability assumed pursuant to this section, the Corporation shall have all of the rights, powers, privileges, and authorities of the Corporation as receiver under sections 1821 and 1825(b) of this title."

18. FED.R.CIV.P. 8(c). *See also, Clark v. Amoco Production Co.*, 794 F.2d 967, 971 (5th Cir.1986).

19. *Id.*

20. *Id.*

that undue prejudice resulted from that delay.[21]

▇▇▇ FDIC argues that laches is not available against the United States as a matter of law.[22] This is only partially true. Laches may not be asserted as a defense against the United States *when acting in its sovereign capacity* to enforce a public right or protect the public interest.[23]

▇▇▇ As a matter of law, the FDIC is an agency of the United States government.[24] However, the issue of whether the FDIC is acting in a sovereign capacity to enforce a public right or protect a public interest need not be reached. Laches is usually available only in suits brought in equity or in actions at law involving claims which are essentially equitable, and applies when there is no analogous statutory limitation.[25] Under Texas law, the doctrine of laches is inapplicable to an action that comes within the provision of a particular statute of limitations.[26]

FDIC brings this suit in its corporate capacity as assignee of TBT's causes of action against the officers and directors. FDIC alleges in its pleadings that FDIC–Receiver acquired this cause of action when FDIC–Receiver was appointed by the State as liquidating agent. In the Fifth Circuit, there is no authority which dictates whether FDIC–Corporate, in prosecuting actions such as the case at bar, acts in a sovereign capacity to enforce a public right or protect the public interest. However, it is clear that, under Texas law, laches is not available in this case because 1) the case is an action at law, not equity, and 2) there is an applicable statute of limitations.[27] The affirmative defense of laches should be stricken.

## C. Waiver (Niblo, Wright, Dickson)

▇▇▇ Waiver is an affirmative defense which must be pled in the affirmative.[28] Under Texas law, waiver is the voluntary, intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.[29] The elements of waiver are 1) an existing right, benefit, or advantage; 2) knowledge, actual or constructive, of the existence of that right, benefit, or advantage; and 3) actual intent to relinquish the right, which can be inferred from conduct.[30] Generally, waiver is a fact question turning on the question of intent.[31] The acts, words, or conduct relied upon to establish intention must be such as to manifest an unequivocal intention to no longer assert the right.[32] Waiver becomes a matter of law only where the material facts and circumstances are undisputed and there is no room for argument or inference.[33]

▇▇▇ Plaintiff argues that the defense of waiver is insufficient as a matter of law because it calls into question the conduct of

---

**21.** *Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1161 (5th Cir.1982).

**22.** *See FDIC v. Roldan Fonseca,* 795 F.2d 1102, 1109 (1st Cir.1986); *FDIC v. Isham,* 782 F.Supp. 524, 532 (D.Colo.1992); *FDIC v. Crosby,* 774 F.Supp. 584, 587 (W.D.Wash.1991); *RTC v. International Ins. Co.,* 770 F.Supp. 300, 308 (E.D.La.1991); *FDIC v. Baker,* 739 F.Supp. 1401, 1407 (C.D.Cal.1990); *FDIC v. Martinez Almodovar,* 671 F.Supp. 851, 873 (D.P.R.1987); *FDIC v. Leach,* 525 F.Supp. 1379, 1388 (E.D.Mich.1981), *aff'd in part, rev'd in part,* 772 F.2d 1262 (6th Cir.1985).

**23.** *United States v. Popovich,* 820 F.2d 134, 136 (5th Cir.), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987) (emphasis added).

**24.** *See* 12 U.S.C. § 1819(b)(1).

**25.** *Clark,* 794 F.2d at 971.

**26.** *Id.* 794 F.2d at 972.

**27.** *See supra* notes 15–17 and accompanying text (regarding statute of limitations for FDIC actions).

**28.** FED.R.CIV.P. 8(c).

**29.** *First Interstate Bank of Arizona, N.A. v. Interfund Corp.,* 924 F.2d 588, 595 (5th Cir.1991). *See also, Pitts by and through Pitts v. American Security Life Insurance Co.,* 931 F.2d 351, 357 (5th Cir.1991).

**30.** *First Interstate,* 924 F.2d at 595.

**31.** *Id.*

**32.** *Id.*

**33.** *Id.*

the FDIC.[31] Plaintiff asserts that this court should strike the affirmative defense of waiver because the FDIC owes no duty to the Defendants. The assertion that waiver is not a valid defense because the FDIC owes no duty to the Defendants is not sound. Waiver describes the act, or the consequences of the act, of the party claimed to have waived its right.[35] Waiver does not rest upon any duty owed to the other party, but rather a party's duty to itself to act upon or lose a specific right.

Plaintiff contends that the duties of the FDIC run only to the FDIC insurance fund and to the public. Assuming, without deciding, that those are the only parties to whom the FDIC's duties run, then the FDIC's duties to the insurance fund and to the public are to act with diligence to assert its rights against Defendants or risk waiving those rights. If the FDIC has acted in such a manner that it has waived its rights against Defendants, it is irrelevant that FDIC may not owe a duty to Defendants. Because the issue of waiver is a question of fact, and based on the preceding discussion, the Defendants' affirmative defense of waiver should not be stricken as insufficient as a matter of law.

### D. Estoppel (Niblo, Wright, Dickson)

Estoppel is a defensive matter which must be set forth in the affirmative.[36] Although waiver and estoppel are sometimes used interchangeably, there is a subtle but significant legal distinction between the terms. While waiver is predicated on the conduct of only one party, estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated.[37]

The elements of estoppel are: 1) the party to be estopped made a definite misrepresentation to the party asserting estoppel; 2) the party to be estopped was aware of the facts; 3) the party to be estopped intended the party asserting estoppel to act on its misrepresentation or had reason to believe the party asserting estoppel would act on its misrepresentation; 4) the party asserting estoppel neither had knowledge nor reason to know of the facts; and 5) the party asserting the estoppel reasonably relied on the misrepresentation to its detriment.[38]

Plaintiff urges this Court that estoppel may not be asserted against the government as a matter of law.[39] With respect to the availability of an estoppel defense against the government, the *Heckler* court said:

> When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant. Petitioner urges us to expand this principle into a flat rule that estoppel may not in any circumstances run against the Government. We have left the issue open in the past, and do so again today. Though the arguments the Government advances for the rule are substantial, we are hesitant, when it is unnecessary to decide this case, to say that there are no cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with the Government. But however heavy the burden might be when an estoppel is asserted

---

**34.** *FDIC v. Isham*, 782 F.Supp. 524, 532 (D.Colo. 1992); *FDIC v. Crosby*, 774 F.Supp. 584 (W.D.Wash.1991).

**35.** *Pitts*, 931 F.2d at 357.

**36.** FED.R.CIV.P. 8(c).

**37.** *Pitts*, 931 F.2d at 357.

**38.** *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1983).

**39.** *FSLIC v. Shelton*, 789 F.Supp. 1367, 1370 (M.D.La.1992) (striking estoppel as to FDIC–Receiver); *FDIC v. Isham*, 782 F.Supp. 524, 532 (D.Colo.1992); *FDIC v. Crosby*, 774 F.Supp. 584 (W.D.Wash.1991).

against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present.[40]

Clearly, the Supreme Court has declined to hold that, as a matter of law, estoppel is invalid as a defense against the Government. However, a party seeking to estop the government bears a heavy burden; in addition to establishing the elements of estoppel, the party must show more than mere negligence, delay, inaction, or failure to follow an internal agency guideline.[41] The party asserting estoppel against the government cannot base its reliance solely on oral representations.[42] Also, the government cannot be estopped by the acts of its agents in entering into an agreement or arrangement to do what the law does not sanction or permit.[43]

While Defendants have shown no facts which would indicate that the Plaintiff has made misrepresentations which have been relied upon by Defendants to their detriment, Plaintiff has neither shown that the defense of estoppel is improperly asserted. Defendants will bear a heavy burden in attempting to prove estoppel, but the law does not preclude them from making such an attempt. This defense should not be stricken.

E. Failure to Mitigate Damages (All Defendants)·

Defendants assert as a matter in avoidance, that Plaintiff, or its predecessors in interest, failed to mitigate the damages, if any, caused by Defendants. Failure to mitigate damages is an affirmative defense within the ambit of Rule 8(c).[44]

A party claiming damages resulting from the wrongful conduct of another must take reasonable advantage of opportunities to reduce or minimize losses.[45] Plaintiff asserts that failure to mitigate damages should be stricken from Defendants' pleadings because it is insufficient as a matter of law.[46] Plaintiff cites no mandatory authority to the Court for the proposition that an injured party owes the alleged wrongdoer a duty to mitigate.[47] In fact, the Fifth Circuit has stated otherwise in discussing Texas law:

> While it is commonly said that an injured party has a 'duty' to minimize damages, this is a misnomer, for *the victim owes no duty to the person who hurts him.* The principle, correctly stated, is that the injured person may not recover damages that do not result proximately from the defendant's breach of duty. Damages that might be avoided or mitigated are, therefore, not recoverable.[48]

In other words, a plaintiff's duty to mitigate its damages is owed to itself if that plaintiff desires to have full satisfaction of its damages. The affirmative defense of mitigation

---

40. 467 U.S. at 60–61, 104 S.Ct. at 2224.

41. *Mangaroo v. Nelson,* 864 F.2d 1202, 1204–5 (5th Cir.1989).

42. *See Heckler,* 467 U.S. at 65, 104 S.Ct. at 2226–27.

43. *Hicks v. Harris,* 606 F.2d 65, 68 (5th Cir. 1979).

44. FED.R.CIV.P. 8(c). *See Ingraham v. United States,* 808 F.2d 1075, 1078 (5th Cir.1987).

45. *FDIC v. Wheat,* 970 F.2d 124, 132 (5th Cir. 1992). Note that the duty to mitigate damages is not absolute, but only required where reasonable.

46. *RTC v. Scaletty,* 810 F.Supp. 1505, 1517–18 (D.Kan.1992); *RTC v. Kerr,* 804 F.Supp. 1091, 1100 (W.D.Ark.1992); *FSLIC v. Shelton,* 789 F.Supp. 1367, 1370 (M.D.La.1992); *FDIC v. Is-*

ham, 782 F.Supp. 524, 531–2 (D.Colo.1992); *FDIC v. Crosby,* 774 F.Supp. 584, 587 (W.D.Wash.1991); *FDIC v. Eckert Seamans Cherin & Mellott,* 754 F.Supp. 22, 25–6 (E.D.N.Y. 1990); *FDIC v. Baker,* 739 F.Supp. 1401, 1403–07 (C.D.Cal.1990); *FSLIC v. Burdette,* 718 F.Supp. 649, 662–64 (E.D.Tenn.1989); *FDIC v. Berry,* 659 F.Supp. 1475, 1483 (E.D.Tenn.1987); *FDIC v. Dempster,* 637 F.Supp. 362, 364–67 (E.D.Tenn.1986). The decision in *FSLIC v. Roy,* No. CIV JFM–87–1227, 1988 WL 96570 at 1 (D.Md. June 28, 1988) provides the basis for the decisions in the above-cited cases. *But see, FDIC v. Ashley,* 749 F.Supp. 1065, 1068–69 (D.Kan. 1990) and *FDIC v. Cherry Bekaert & Holland,* 742 F.Supp. 612 (M.D.Fla.1990).

47. Plaintiff relies on the "no duty" rule for its assertion, citing only cases involving the FDIC, none of which discuss mitigation of damages under Texas law.

48. *Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129, 1139 (5th Cir.1985).

of damages is not insufficient as a matter of law, and should not be stricken.

### F. Contributory or Comparative Negligence (All Defendants)

■ Contributory negligence is a matter in avoidance which must be pled in accordance with Rule 8(c).[19] Comparative negligence, while not specifically set out in Rule 8(c), is similar to the defense of contributory negligence, and thus falls within the "catchall" provision of Rule 8(c).[50]

■ For actions based on negligence, Texas has enacted a comparative responsibility statute.[51] For actions such as the case at bar, under Texas law, a defense of contributory negligence does not apply. Because the rule in Texas is comparative responsibility, contributory negligence should be stricken as insufficient as a matter of law.

The Texas rule of comparative responsibility applicable in the case at bar is found at Texas Civil Practice and Remedies Code § 33.001(c).[52] That section states:

> In an action in which a claimant seeks damages for harm other than personal injury, property damage, or death, arising out of any action grounded in negligence, ... a claimant may recover damages only if his percentage of responsibility is less than or equal to 50 percent.[53]

■ Negligence is comprised of three elements: 1) the existence of a duty on the part of one party to another; 2) breach of that duty; and 3) injury proximately caused by the breach.[54] The defense of comparative responsibility operates exactly as its name implies: the conduct of the plaintiff must be examined in light of the elements of negligence and compared to the negligence of the defendant. As such, the plaintiff must first prove negligence on the part of the defendant. Once the defendant is shown to be negligent, the defendant must prove each of the three elements of negligence with respect to the plaintiff. The negligence of the plaintiff and defendant are then compared in light of the statutory requirements.

■ In the case at bar, Plaintiff can only recover if the Defendants' negligence is greater than or equal to 50 percent. Note that the Defendants cannot make an affirmative recovery if the Plaintiff is shown to be more than 50 percent responsible for the alleged harm. Such a showing by Defendants would only act as a bar to recovery by Plaintiff. Comparative responsibility is a purely defensive matter, and not an affirmative claim or action for payment from, or an action to determine rights with respect to, any assets of the FDIC.

■ In any event, the fact that Defendants must prove each element of negligence as to the Plaintiff in order to prevail on its comparative responsibility defense indicates that Plaintiff must owe some duty to the Defendants. Plaintiff asserts that the FDIC owes no duty to the Defendants, and because it owes no duty, any affirmative defense which requires a duty on the part of FDIC should be stricken as insufficient.[55]

■ FDIC bases its argument on several district court cases from outside this district which have held that the FDIC owes no duty to the officers and directors of a failed institution.[56] All of these opinions

---

49. FED.R.CIV.P. 8(c).

50. The last final clause in the first sentence of Rule 8(c), "and any other matter constituting an avoidance or affirmative defense" is known as the "catchall" provision.

51. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 33.001 (Vernon Supp.1993).

52. TEX.CIV.PRAC. & REM.CODE ANN. § 33.-001(c) (Vernon Supp.1993).

53. *Id.*

54. *FDIC v. Ernst & Young*, 967 F.2d 166, 170 (5th Cir.1992).

55. *See supra* note 46 and cases cited therein.

56. *RTC v. Scaletty*, 810 F.Supp. 1505, 1517–18 (D.Kan.1992); *FDIC v. Lowe*, 809 F.Supp. 856, 858–59 (D.Utah 1992); *RTC v. Youngblood*, 807 F.Supp. 765, 771–74 (N.D.Ga.1992); *RTC v. Kerr*, 804 F.Supp. 1091, 1100 (W.D.Ark.1992) *RTC v. Greenwood*, 798 F.Supp. 1391, 1397–98 (D.Minn.1992); *FSLIC v. Shelton*, 789 F.Supp. 1367, 1370 (M.D.La.1992); *First Financial Savs. Bank, Inc. v. American Bankers Ins. of Florida*, 783 F.Supp. 963, 968–69 (E.D.N.C.1991); *FDIC v. Isham*, 782 F.Supp. 524, 531–2 (D.Colo.1992); *FDIC v. Crosby*, 774 F.Supp. 584, 587 (W.D.Wash.1991); *FDIC v. Eckert Seamans Cherin & Mellott*, 754 F.Supp. 22, 25–6 (E.D.N.Y.

draw their reasoning from an unreported case available on *WESTLAW.* That case, *FSLIC v. Roy,*[57] states:

> Banking is a business which directly affects the public welfare, and the law places a heavy duty upon the officers and directors of banking institutions to manage their affairs properly. *See, e.g.,* W. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations Section 1035, at 34 (S. Flanagan & C. Keating eds. 1986). If officers and directors have negligently recommended and approved a significant number of loans in their institution's portfolio (a fact which may be assumed here since otherwise the question of proximate cause would be irrelevant), they have breached this duty. FSLIC has been created for the purpose of preserving the integrity of the national banking system by providing an insurance fund to cover the deposits of failed and failing institutions. FSLIC owes no duty to those institutions or to those whose negligence has brought them to the brink of disaster. Self-evidently, it is the public which is the beneficiary of FSLIC, just as it is the public which is beneficiary of the common law duty imposed upon officers and directors to manage properly the institutions entrusted to their care. Thus, nothing could be more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing institution—a risk which would never have been created but for defendant's wrongdoing in the first instance. Yet, this is precisely what the consequences would be if, as defendants contend, they are permitted to assert claims, either directly or indirectly by way of defense, against FSLIC's insurance fund.[58]

This opinion cites no case authority for its proposition. The argument does, however, have a certain appeal in that the banking authorities should not shoulder the responsibility of operating the bank when there is a duly elected board of directors in place for that purpose. However, once the authorities take over the bank, they are stepping into the shoes of the former officers and directors and are operating the bank themselves. Even if the FDIC did not owe the former officers and directors a duty when the FDIC was acting in its insurer and regulator capacities, the conduct of the FDIC after assuming control of a failed bank's assets and in seeking to collect or work out bad loans must not be such that the FDIC causes losses to the failed institution which could have been avoided, either by diligent collection efforts, diligent and proper marshalling of or proceeding against valuable collateral, or otherwise.[59]

---

1990); *FDIC v. Baker,* 739 F.Supp. 1401, 1403–07 (C.D.Cal.1990); *FSLIC v. Burdette,* 718 F.Supp. 649, 662–64 (E.D.Tenn.1989); *FDIC v. Berry,* 659 F.Supp. 1475, 1483 (E.D.Tenn.1987); *FDIC v. Dempster,* 637 F.Supp. 362, 364–67 (E.D.Tenn.1986). These cases, for the most part, hold that FDIC–Regulator and FDIC–Receiver owe no duty to the failed bank's officers and directors. Whether the FDIC–Corporate as assignee of FDIC–Receiver owes any duty to these parties is generally not confronted in the reported cases. *But see, FDIC v. Ashley,* 749 F.Supp. 1065, 1068–69 (D.Kan.1990) and *FDIC v. Cherry Bekaert & Holland,* 742 F.Supp. 612 (M.D.Fla. 1990).

**57.** No. CIV JFM–87–1227, 1988 WL 96570 (D.Md. June 28, 1988).

**58.** *Id.* at 1.

**59.** Although it is probably true that the FDIC owes no duty to the former officers and directors of a failed bank, the FDIC undisputedly owes a duty to the insurance fund to maximize recovery.

United States Code Title 12, section 1821(d)(13)(E), states:

> In exercising any right, power, privilege, or authority as conservator or receiver in connection with any sale or disposition of assets of any insured depository institution for which the Corporation has been appointed conservator or receiver, including any sale or disposition of assets acquired by the Corporation under section 1823(d)(1) of this title, the Corporation shall conduct its operations in a manner which—
> (i) maximizes the net present value return from the sale or disposition of such assets;
> (ii) minimizes the amount of any loss realized in the resolution of cases; . . . .

12 U.S.C. § 1821(d)(13)(E) (West Supp.1993). This alone creates duties to mitigate damages and not to occasion greater losses on the insurance fund by the FDIC's own conduct on FDIC as conservator and receiver. Such conduct is also charged on FDIC–Corporation by 12 U.S.C. § 1823(d)(3)(A).

This court has previously ruled in *FSLIC v. Vineyard*,[60] that the conduct of the FSLIC cannot be questioned as to its *normal regulatory and supervisory activities*.[61] In other words, the preclosing actions of the FSLIC (and similarly, FDIC) cannot be questioned. However, this holding does not foreclose such a determination in actions by the FDIC in other capacities, such as receiver or liquidator.[62]

The FDIC in the present case was appointed receiver. Because of the rapidity with which FDIC must act when appointed receiver, and because of the lack of choice involved in being appointed receiver, the FDIC's argument that its conduct as receiver should not be questioned has some merit. However, in the case at bar, the FDIC sues in its corporate capacity, and not as receiver. FDIC–Corporate has acquired the claim by assignment from the FDIC–Receiver. FDIC–Receiver and FDIC–Corporate are separate entities, and one cannot be held accountable for the actions of the other.[63] As such, Defendants should not be allowed to examine FDIC's conduct prior to the point at which FDIC–Corporate acquired the present cause of action as well as the loans which form the basis for the alleged director negligence and breach of fiduciary duty. But once FDIC–Corporate acquired the loans and the negligence and breach of fiduciary duty causes of action, their conduct in resolving these assets should be subject to scrutiny.[64] To allow otherwise would relieve FDIC–Corporate from any requirement of proceeding against the makers, who received the benefit of the loan and who have failed to repay the borrowed funds, or the collateral pledged, which may provide some recovery, and permit the FDIC to seek recovery primarily from former bank officers and directors who may be solvent but received at best only an indirect benefit from approving such loans.

FDIC–Corporate's conduct as assignee, however, would seem to relate more to proximate causation of the loss and mitigation of damages than to whether the conduct of the FDIC was negligent. A comparative negligence defense would require the examination of the conduct of the FDIC in the transactions allegedly resulting in losses. The transactions which have allegedly caused the loss to TBT are the making of the loans which Plaintiff identifies in its pleadings. Clearly, the FDIC was not a party to the original transaction, and it indeed did not owe any duty to the parties to those transactions.

Therefore, to the extent that the affirmative defense of comparative responsibility seeks to examine the conduct of the FDIC in its capacities as insurer, regulator, receiver, or liquidator of TBT, the defense should be stricken. However, the conduct of FDIC, in carrying out its duties to the insurance fund and the public under 12 U.S.C. § 1821(d)(13)(E), is subject to examination under the affirmative defense of mitigation of damages or under the defense of no proximate causation.

G. Contribution (Offset and Recoupment) (Niblo, Wright, Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox, Dickson)

 Contribution is not an affirmative defense within the purview of Rule 8(c).[65] It is a claim for recovery which must be pled and proved. At the present, no Defendant in the case at bar has made an affirmative claim for contribution against Plaintiff, but only pled contribution as a matter in avoidance.

---

60. No. CA–3–88–130–C (N.D.Tex. July 25, 1988) (order regarding Plaintiff's Motion to Strike Certain Affirmative Defenses).

61. *Id.* at p. 5 (striking defendants' affirmative defenses as to FSLIC's normal regulatory and supervisory activities and denying in all other respects) (emphasis added).

62. However, as discussed in note 57, *supra*, the FDIC probably owes no duty to anyone but itself and the public.

63. *See FDIC v. Condit*, 861 F.2d 853 (5th Cir. 1988).

64. *See FDIC v. Ernst & Young*, 967 F.2d 166, 170 (5th Cir.1992).

65. FED.R.CIV.P. 8(c).

For the reasons discussed below, this court will not read Defendants' "affirmative defense" as a counterclaim pursuant to the last sentence of Rule 8(c).

 A claim for contribution has two necessary prerequisites: 1) a judgment finding the party seeking contribution to be a joint tortfeasor; and 2) the payment by such party of a disproportionate share of the judgment.[66] There has been no judgment against Defendants with respect to any claims in this case, much less one finding Defendants jointly and severally liable with the FDIC, nor has there been a payment of a judgment by Defendants of a disproportionate amount, if any.

 Implicit in these prerequisites is that the party from whom contribution is sought must have been found to be a joint tortfeasor with the party seeking contribution. This is so because otherwise the claim for contribution would be nonsensical if brought against a party not jointly responsible for the loss with the party seeking contribution.

In Texas, contribution is governed by two sections of the Civil Practice and Remedies Code. Chapter 32 applies only to codefendants, and does not apply here.[67] As such, the prerequisites for contribution cannot be satisfied. The other contribution section applies only in situations where there is comparative responsibility.[68] As stated above, Defendants will not be able to show comparative responsibility in the case at bar, nor can they ever make such a showing. Therefore, Defendants cannot have a claim for contribution.

 Finally, because contribution is an affirmative claim, this court does not have subject-matter jurisdiction.[69] Defendants must first present these claims through the administrative claims process provided for in 12 U.S.C. § 1821.[70] Therefore, the court should strike the defense of contribution, and not read it as a counterclaim, because justice would not so require. Doing such would be a useless act.

H. Indemnity (Niblo, Wright, Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox, Dickson)

 Like contribution, indemnity is not an affirmative defense within the purview of Rule 8(c), but rather a claim for recovery which must be pled and proved. Again, no Defendant has asserted a counterclaim for indemnity against Plaintiff. Defendants seek to assert indemnity as a matter in avoidance.

 Under Texas law, the right to indemnification arises from an express or implied contract.[71] Defendants do not have pleadings which assert a contractual relationship between either the former officers and directors as a whole or each individual former officer or director and the FDIC.

 Without a contract of indemnity, or a contractual relationship from which an implied contract of indemnity can arise, the parties asserting indemnity must turn to the alternate branch of Texas indemnity law— common law indemnity. The availability of common law indemnity is extremely limited, because the Texas Supreme Court has held that the former article 2212a, Texas Revised Civil Statutes, abolished the common law doctrine of indemnity between joint tortfea-

66. *Beech Aircraft Corp. v. Jinkins,* 739 S.W.2d 19, 21 (Tex.1987).

67. Section 32.001 states: "(a) This chapter applies only to tort actions. (b) This chapter does not apply if a right of contribution, indemnity, or recovery between defendants is provided by other statute or by common law." Section 32.002 states: "A person against whom a judgment is rendered has, on payment of the judgment, a right of action to recover payment from each codefendant against whom judgment is also rendered." TEX.CIV.PRAC. & REM.CODE ANN. §§ 32.001–002 (Vernon 1986). Because this chapter applies only to codefendants, and requires that a judgment be rendered, the defense under this chapter is not only not applicable, but also premature.

68. TEX.CIV.PRAC. & REM.CODE ANN. § 33.-011, *et seq.,* (Vernon Supp.1993).

69. *See* 12 U.S.C. § 1821(d)(13)(D)(i). (*See infra* for a discussion of the subject matter jurisdiction argument advanced by Plaintiff.)

70. 12 U.S.C.A. §§ 1821(d)(4)–(10) (West 1989 and Supp.1993).

71. *Hondo Oil & Gas Co. v. Texas Crude Operators, Inc.,* 970 F.2d 1433, 1441 (5th Cir.1992).

sors.[72] Subsequent to that opinion, the Texas Supreme Court has recognized two exceptions to its holding in *Cypress Creek*. Those exceptions where common law indemnity survives are: 1) to protect an innocent retailer in the chain of distribution in a products liability action; and 2) to protect a defendant in negligence actions whose liability is purely vicarious.[73]

In the case at bar, there is no contractual relationship from which to draw an express or implied indemnification agreement. Additionally, neither of the common law exceptions is applicable. Because the prerequisites for a claim for indemnity do not exist in the facts of the case at bar, the court should not read the mislabeled defense of indemnification as a counterclaim pursuant to Rule 8(c). Such a construction would not be in the interest of justice because it would be a useless act.

I. Business Judgment Rule (All Defendants)

 The business judgment rule is an affirmative defense within the meaning of Rule 8(c).[74] It is a bar to recovery on a claim of breach of duty by a corporation's officers and directors. The rule precludes judicial interference with the business judgment of directors of a corporation absent a showing of fraud or an *ultra vires* act.[75] If such a showing is not made, the good or bad faith of the directors is irrelevant.[76] The rule, as related to banks, is as follows:

> a director or officer of a bank shall not be liable for claims against him if, in the discharge of his duties, he exercised ordinary care and acted in good faith and

honestly exercised his best business judgment within the limits of the actual authority of his position with the bank. A director or officer of a bank shall not be held liable for honest mistake of judgment if he acted with due care, in good faith, and in furtherance of a rational business purpose.[77]

The business judgment rule raises issues of fact to be determined at trial.[78] This defense should not be stricken as insufficient.

J. Assumption of Risk (Niblo, Wright, Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox, Dickson)

 Assumption of risk is an affirmative defense under Rule 8(c).[79] Under Texas law, assumption of risk has been subsumed within the issue of comparative responsibility.[80] As such, this defense should be stricken as insufficient.

K. Exemplary Damages Violate Defendants' Rights under the Texas and United States Constitutions (Niblo, Wright, Dickson)

Awards of exemplary damages are governed by Texas Civil Practice & Remedies Code § 41.001, *et seq.*[81] In the case at bar, the applicable standard for awarding exemplary damages is found in § 41.003(a): "Exemplary damages may be awarded only if the claimant proves that the ... harm with respect to which the claimant seeks recovery of exemplary damages results from: ... (3) gross negligence." [82]

 Plaintiff has pled, in connection with its breach of fiduciary duty claim, that the Defendants' conduct was grossly negligent.

---

**72.** *Cypress Creek Utility Service Co. v. Muller,* 640 S.W.2d 860, 864 (Tex.1982).

**73.** *See Hardy v. Gulf Oil Co.,* 949 F.2d 826, 830–31 (5th Cir.1992).

**74.** FED.R.CIV.P. 8(c).

**75.** *Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707, 723 (5th Cir.1984).

**76.** *Id.* n. 9.

**77.** *FDIC v. Wheat,* 970 F.2d 124, 130–31 n. 13 (5th Cir.1992) (finding no reversible error by

court in giving quoted instruction to jury in director and officer liability case).

**78.** Those fact issues are fraudulent or *ultra vires* acts by the directors, and the directors' good or bad faith.

**79.** FED.R.CIV.P. 8(c).

**80.** *Exxon Corp. v. Tidwell,* 816 S.W.2d 455, 469 (Tex.App.—Dallas 1991, writ granted).

**81.** TEX.CIV.PRAC. & REM.CODE ANN. § 41.001, *et seq.* (Vernon Supp.1993).

**82.** TEX.CIV.PRAC. & REM.CODE ANN. § 41.003(a) (Vernon Supp.1993).

If Plaintiff proves gross negligence and actual damages at trial and convinces a jury that exemplary damages should be awarded, it is entitled to recover such damages. Those damages are limited to the greater of four times the actual damages or $200,000.[83]

The Texas exemplary damages statute was enacted in 1987. Since then, the constitutionality of the statute has been tested in the courts. The courts have held that the current system of imposing exemplary damages under the Civil Practice and Remedies Code does not violate the Texas and United States Constitutions, and that a party against whom exemplary damages were assessed was not deprived of its due process thereby.[84]

Based on the foregoing, Defendants' affirmative defense (if such a defense can be characterized as an affirmative defense) of unconstitutionality of exemplary damages should be stricken as insufficient as a matter of law. The Texas courts have found the award of exemplary damages constitutional. Defendants' lone argument with respect to an exemplary damage award would arise in the post-trial phase if such a penalty were levied in excess of the statutorily mandated maximums. Presently, at this phase of pre-trial proceedings, Plaintiffs have not been awarded actual and punitive damages against which such an analysis could be made on behalf of the Defendants.

L. Statutory Indemnification and Limited Liability of Officers and Directors of Corporations Pursuant to Texas Business Corporation Act Articles 2.02–1 & 2.41, Texas Miscellaneous Corporation Laws Article 1302–7.06, and Texas Banking Code Article 342–410 (All Defendants)

 Texas Business Corporation Act articles 2.02–1 and 2.41,[85] Texas Miscellaneous Corporation Laws article 1302–7.06,[86] and Texas Banking Code Article 342–410,[87] all provide for indemnification of officers and directors of corporations, including state-chartered banks, under certain circumstances. Provisions of each of those statutes may apply to the case at bar. Neither Plaintiff nor Defendants make argument nor present evidence that the prerequisites of the statutes have been met. Certain of the statutory prerequisites are fact-based, and as such, do not lend themselves to a determination of legal sufficiency at this stage of the proceedings. Therefore, because there are certain facts which must be demonstrated as a prerequisite to invoking these defenses, they should not be stricken, at least until those facts are aired.

M. No Liability to FDIC as Subrogee of Depositors (Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox)

 Defendants argue that they are not liable to the FDIC as a subrogee of the depositors of the failed TBT. It is Defendants' position that a director is liable to creditors only for failing to administer assets which have come into the directors' hands following the dissolution of the bank for the benefit of creditors. Defendants state that the assets of the bank never came into their hands following dissolution, nor did they administer any assets following dissolution.

Whatever merit this argument may have is irrelevant. FDIC is not suing as a subrogee of the creditors of the failed bank. FDIC brings the present action in its corporate capacity as assignee of tort claims which belonged to the failed bank. This defense should be stricken as irrelevant to the case at bar.

---

83. TEX.CIV.PRAC. & REM.CODE ANN. § 41.-007.

84. *General Chemical Corp. v. De La Lastra*, 815 S.W.2d 750, 760 (Tex.App.—Corpus Christi 1991), *affirmed in part, reversed in part*, 36 Tex. Sup.Ct.J. 574 (1993). The constitutionality of the exemplary damage statute was not contested on appeal to the supreme court, but only whether the award of damages was excessive under Texas state laws and the state constitution. The award in that case was affirmed as constitutional.

85. TEX.BUS.CORP. ACT ANN. arts. 2.02–1, 2.41 (Vernon Supp.1993).

86. TEX.MISC.CORP.LAWS art. 1302–7.06 (Vernon Supp.1993).

87. TEX.BANK.CODE art. 342–410 (Vernon Supp.1993).

N. Ratification by Directors and Stockholders (Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox)

■■■■ Ratification is an equitable defense within the purview of Rule 8(c).[88] The stockholders of a corporation can ratify any act of a director or officer so long as the act is not violative of the law or public policy.[89] The acts for which Defendants assert the defense of ratification are the alleged negligence and breach of fiduciary duty in the Defendants' conduct of bank business. These alleged acts are clearly violative of the law, and therefore cannot be ratified. Thus, the defense of ratification should be stricken as insufficient.

O. Good Faith Reliance on Advice of Others (Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox)

The defense of good faith reliance on advice of others under Texas law, is governed by the Texas Business Corporation Act.[90] To the extent that this assertion is redundant of Defendants' prior assertion of statutory protections (as discussed in section L, *supra*), the defense of good faith reliance should be stricken.

P. Waste of Receivership Assets (Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox, Hampton, Hutson, Wootan)

■■■■ Defendants' "affirmative defense" of waste of receivership assets is better characterized as a counterclaim. However, to the extent that this counterclaim seeks to inspect the conduct of FDIC–Receiver, and to the extent that such a claim must first be presented for administrative determination under 12 U.S.C. § 1821 prior to this court having jurisdiction over said claim, this matter should be stricken.

Q. No Proximate Causation, Sole Proximate Causation, (Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox, Hampton, Hutson, Wootan) and Intervening Causation (Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox)

The Defendants' "affirmative defenses" of no proximate causation, sole proximate causation, and/or intervening causation are not affirmative defenses. Such defensive assertions are inferential rebuttal defenses because they seek to negate an essential element of Plaintiff's prima facie case.[91] Plaintiff, in order to prevail on its claims, must prove that the losses allegedly occasioned by TBT or FDIC were proximately caused by the Defendants' alleged negligence and breaches of fiduciary duties. That is Plaintiff's burden of proof. Defendants may contest any proof which Plaintiff proffers to show that Defendants proximately caused the alleged losses, or provide their own proof that Defendants did not proximately cause the alleged losses. Such a tactic would be a proper defensive technique, but is improperly denominated as an affirmative defense. The Court will not strike such defenses, but rather read the defenses as if properly denominated.

R. No Approval and Confirmation of Acquisition of Action from Receivership Court (Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox)

■■■ Defendants argue that the 32d Judicial District Court, Nolan County, Texas, which is the court where receivership proceedings originated, has not approved the transfer of the present cause of action to the FDIC–Corporate. Federal law permits the FDIC, when acting as conservator or receiver, to transfer any asset or liability of the institution in default without any approval, assignment, or consent with respect to such transfer.[92] Because no prior approval was necessary to transfer the cause of action to

---

88. FED.R.CIV.P. 8(c). *See Greater Fort Worth and Tarrant County Community Action Agency v. Mims,* 627 S.W.2d 149, 151 (Tex.1982).

89. *See Continental Assurance Co. v. Supreme Constr. Corp.* 375 F.2d 378, 383 (5th Cir.1967).

90. TEX.BUS.CORP.ACT art. 2.41(D) (Vernon Supp.1993).

91. *See Turlington v. Phillips Petroleum Co.,* 795 F.2d 434, 441 (5th Cir.1986).

92. 12 U.S.C.A. § 1821(d)(2)(G)(i)(II) (West 1989).

FDIC–Corporate, this defense is insufficient as a matter of law, and should be stricken.

S. FDIC Should Have Removed Officers and Directors for Engaging in Unsafe and Unsound Practices (Burgess, Calcote, Cain, Adkins, Cox, Martin, Cox, Hampton, Hutson, Wootan)

■ Defendants assert as an affirmative· defense that the FDIC, as regulator, and also as the sole stockholder of TBT from February 17, 1989, should have asserted its rights under 12 U.S.C. §§ 1818(d)(1)(ii) & (iii) [93] to remove any director or officer who had engaged in unsafe and unsound practices or who had breached his fiduciary duty. Although the provisions of that code section do allow for removal of directors and officers under the described circumstances, the language of that statute clearly leaves the FDIC discretion to do so by using the permissive *may* instead of the mandatory *shall.* The statute imposes no duty on the FDIC to remove directors under the circumstances described therein. The removal is a matter of agency discretion,·but the Defendants may show that the FDIC abused its discretion in not exercising its right to remove directors and officers. Therefore, this defense should not be stricken.

## VI. Other Matters

A. Subject Matter Jurisdiction

■ Plaintiff argues that the Court does not have subject matter jurisdiction to hear Defendants' "claims" of Plaintiff's negligence based on 12 U.S.C. § 1821(d)(13)(D).[91] While § 1821 relates to powers of the FDIC as receiver and conservator, 12 U.S.C. § 1823(d)(3)(A) grants the same rights, powers, privileges, and authorities to the FDIC with respect to any asset acquired or liability assumed from the FDIC as conservator or receiver.

---

**93.** 12 U.S.C. §§ 1818(d)(1)(ii) & (iii) (West 1989).

**94.** That statute states:
Except as otherwise provided in this subsection, no court shall have jurisdiction over—
　(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been

---

Plaintiff's argument must necessarily fail. Initially, it must be noted that Defendants have filed no counterclaims against the FDIC. Defendants only seek to assert defensive matters which would relieve them of liability. The affirmative defenses asserted by Defendánts do not seek payment from the assets of the failed TBT.

The assigned rights to sue former officers and directors of TBT are intangible assets of the failed TBT. However, once again, Defendants do not bring a claim or action for payment from or a determination of rights with respect to those assets. Defendants are only seeking to avoid Plaintiff's affirmative claim for relief, and a defense is not a claim or action.

Finally, with respect to 12 U.S.C. § 1821(d)(13)(D)(ii), it is again noted that Defendants have asserted no claims relating to acts or omissions of the FDIC. If Congress had desired to divest the district courts of jurisdiction to hear affirmative defenses asserted against the FDIC, it could have expressly done so within the statute. It did not. Defendants have only interposed defensive matters, which are not claims. Because there are no claims, only defenses, this court clearly has jurisdiction to entertain any such matters.

B.· Public Policy

Plaintiff argues that public policy dictates ·that the affirmative defenses of the Defendants be stricken. Plaintiff's premise is that the officers and directors of the failed institution should bear the loss, rather than the public. Plaintiff cites this court cases from the federal district courts of California (Central and Northern Districts), Colorado, Louisiana·(Western District), Maryland, and Tennessee (Eastern District) for this proposition.

This argument is an outgrowth of the "no duty" rule. Plaintiff seeks to avoid having

---

appointed receiver, including assets which the Corporation may acquire from itself as receiver; or
　(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.
12 U.S.C. § 1821(d)(13)(D) (West 1989).

the FDIC's conduct in collecting the assets of the failed bank immune from examination. As discussed *supra*, this conduct should not be immune from examination inasmuch as the FDIC should not conduct its business to occasion losses upon the Defendants which could have been avoided by using an ordinary degree of prudence.

Plaintiff has cited no authority to this court, statutory, case law, or otherwise, which indicates that such public policy is in operation. This Court should not and will not engage in acts best left to the Congress.[95]

### C. Sovereign Immunity

■ Plaintiff argues that Defendants' affirmative defenses are barred by the doctrine of sovereign immunity. Plaintiff bases this argument on the Federal Tort Claims Act (FTCA), and asserts that the FTCA does not waive the government's immunity from "any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency...."

■ This argument must fail. The basic premise of sovereign immunity is that the government is not subject to liability for discretionary acts performed by its agencies. Defendants, in asserting affirmative defenses, are not seeking to subject the government to liability, and assert no claims against the government for monetary relief to be paid out of the treasury. Rather, the Defendants are seeking to avoid liability. Sovereign immunity is a bar to suit; Defendants have not sued the government. Even if the Defendants had brought counterclaims, it has been held that the "sue and be sued" clause in 12 U.S.C. § 1819(a) (Fourth) is a general waiver of sovereign immunity from claims brought against the FDIC.[96] Plaintiff's sovereign immunity argument is irrelevant to the Defendants' affirmative defenses to claims brought by the government.

### VII. Conclusion

Plaintiff's motion should be granted in part, denied in part according to the discussion above. Specifically, the following portions of Defendants' pleadings should be stricken to the extent discussed above:

As to Defendants Niblo and Wright, paragraphs 15, 19, 20, 22, and 23 of their First Amended Answer;

As to Defendants Burgess, Calcote, and Cain, paragraphs 24, 28, 29, 30, and 31 (except for subparagraph 2—mitigation of damages and any language relating to proximate causation) of their Answer;

As to Defendants Adkins, Cox, Martin, and Cox, paragraphs 24, 28, 29, 30, and 31 (except for subparagraph 2—mitigation of damages and any language relating to proximate causation) of their First Amended Answer;

As to Defendants Hampton, Hutson, and Wootan, paragraph 36 (except for subparagraph 2—mitigation of damages and any language relating to proximate causation) of their Original Answer;

As to Defendant Dickson, paragraphs 13, 18, 19, 21, 22, and 24 of his Response to Original Complaint.

All relief not herein granted with respect to Plaintiff's Motion to Strike Affirmative Defenses is hereby denied.

SO ORDERED.

**95.** Such an attempt to interpose public policy appears to be a veiled attempt to extend the "superpowers" of the *D'Oench, Duhme* doctrine to tort claims. No court has done so, and clearly the scope of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. § 1823(c) is limited to agreements with debtors which do not appear in the bank records and which tend to defeat or diminish the FDIC's rights.

**96.** *MCorp v. Clarke,* 755 F.Supp. 1402, 1412 (N.D.Tex.1991).