790 So.2d 93 (2001)
HAZELWOOD FARM, INC.
v.
LIBERTY OIL AND GAS CORPORATION, et al.
No. 01 0345-CA.
Court of Appeal of Louisiana, Third Circuit.
June 20, 2001.
*94 Stephen Edward Ramey, Hargrove, Guyton, et al., Shreveport, LA, Counsel for Hilliard Petroleum, Inc.
Mark D. Sikes, Ottinger, Hebert, Sikes & Hebert, L.L.C., Lafayette, LA, Counsel for International Petroleum & Exploration Royalty Corporation, International Petroleum and Exploration Operating Corp.
Michael Gregory Cordes, Hoffman, Siegel, etc., New Orleans, LA, Counsel for Meyers-Lasher, Inc.
James Paul Doherty Jr., Opelousas, LA, Counsel for Hazelwood Farm, Inc.
Stephen Craig Carleton, Simoneaux, Ryan, etc., Baton Rouge, LA, Counsel for Chevron U.S.A., Inc.
Gladstone N. Jones III, Smith, Jones & Fawer, L.L.P., New Orleans, LA, Counsel for Hazelwood Farm, Inc.
John H. Smith, McKernan Law Firm, Baton Rouge, LA, Counsel for RPS Energy, Inc., Reliable Production Services, Inc., Liberty Oil and Gas Corporation.
Michael Gregory Stag, Sacks & Smith, New Orleans, LA, Counsel for Hazelwood Farm, Inc.
David Garland, Smith, Jones & Fawer, L.L.P., New Orleans, LA, Counsel for Hazelwood Farm, Inc.
Gerald Whitton, In Proper Person, Homer, LA, Counsel for The Whitton Company.
*95 Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS, and MICHAEL G. SULLIVAN, Judges.
SAUNDERS, Judge.
On appeal, Hazelwood Farm, Inc. (Hazelwood) seeks review of a motion to strike which eliminated its ex contractu claims and its allegations of solidary liability against the Defendants from its pleadings. For the reasons that follow, we reverse.

FACTS
Hazelwood, a Louisiana Corporation, owns approximately six hundred eighty-six acres of agricultural land (the Property) located in St. Landry Parish. Hazelwood acquired the Property by an act of exchange between the Succession of Ernest E. Edmundson, Jr. and Hazelwood, dated December 6, 1991. Ernest E. Edmundson, Jr., Hazelwood's immediate predecessor in title, purchased the Property from John E. Wells on December 27, 1968. Mr. Wells reserved the oil, gas, and mineral rights to himself. Hazelwood acknowledges that it is only the owner of the surface of the Property and that it does not own the minerals beneath the surface of the Property.
The Property has long been the site of oil and gas exploration and production activities. On August 10, 1926, Wilson & Cochran and J.B. Ferguson executed a lease contract, granting the latter the exclusive right to explore the land for the production of minerals. Under the terms of the Wilson & Cochran Lease, the parties maintained the right to assign the Wilson & Cochran Lease to a third party or to third parties. The lease also provided that it would bind the parties' successors and assigns. The Wilson & Cochran Lease, under which all of the Defendants in this litigation have explored for and produced oil and gas on the Property, also provides, "[t]he use of the surface of the land is granted only for the purposes hereof. Grantee shall be responsible for all damages caused by his operations."
The rights granted to the lessee in the Wilson & Cochran Lease, and its attendant obligations, were subsequently assigned, either wholly or partially, to the Defendants in this litigation, including Chevron U.S.A., Inc. (Chevron)[1], Liberty Oil & Gas Corporation (Liberty), Meyers Lasher, Inc. (Meyers Lasher), and International Petroleum and Exploration Royalty Corporation (International Royalty). All of the Defendants to this lawsuit have, at various times since 1926, operated oil and gas wells on the Property pursuant to the rights granted to the lessee and its assignees under the Wilson & Cochran Lease. International Royalty, which assumed the rights of the lessee in 1990, is the current assignee of the Wilson & Cochran Lease, and an entity related to International Royalty, which is also a Defendant herein, International Petroleum and Exploration Operating Corporation (International Operating), is currently operating oil and gas wells on the Property pursuant to the rights and obligations set forth in the Wilson & Cochran Lease. These current operations include entry onto and use of the surface of the Property for the purposes of maintaining and operating wells and other production facilities.
Hazelwood brought this lawsuit seeking to recover damages for environmental contamination and other damages that the Defendants' oil operations have caused to the surface and subsurface of the Property. The Defendants' operations included the construction of numerous earthen pits, including a twelve-acre evaporation pond in which Hazelwood alleges that the Defendants *96 dumped oil, grease, salt water, and other hazardous and/or toxic oil production waste. As a result of such operations, Hazelwood asserts that the surface, surface soils, and groundwater on and beneath the Property have become contaminated with hazardous and toxic wastes consisting of oil and grease, heavy metals, chlorides, and other by-products and constituents of oil and gas production. Hazelwood also shows evidence that the Property is contaminated with radioactive materials and asserts that the Defendants failed to properly plug and abandon wells there. Finally, Hazelwood seeks recovery of revenue lost because it was unable to use the Property for the development of a profitable natural gas salt dome cavern storage facility underneath the Property due to damages caused by the Defendants' operations.

PROCEDURAL FACTS
Hazelwood's suit alleges two different theories of liability, one in tort and one in contract. In its allegations regarding its ex contractu claims, Hazelwood asserts that the Defendants breached their contractual obligations under the Wilson & Cochran Lease to be responsible for all damages caused by their operations. In late 1998, Defendants, Chevron and Liberty, filed separate exceptions of no right of action, arguing in part that Hazelwood was never a party to the Wilson & Cochran Lease; therefore, Hazelwood had no right to assert a contractual claim against them arising out of that lease. The trial court overruled the exceptions. This court and the Louisiana Supreme Court denied both Defendants' applications for supervisory writs of review from that ruling. The thrust of the Defendants' exceptions was that the purchaser of a property has no claim, whether in tort or in contract, for damage to its property that occurred prior to its acquisition of the property. In overruling the exceptions, the trial court stated there was a host of disputed factual and legal issues that precluded maintaining the exceptions:
It all boils down to when, where and what type of damage was done to the property, who owned it at that particular time and how each owner was affected by the delictual activity in question. Was it continuing damage? Did the parties have constructive or actual knowledge of the damage? Has the cause of action prescribed? Was there solidary liability? There is a smorgasbord of legal issue issues to be decided in a case such as this. Defendants' exception does not address this. Plaintiff may not be able to prove his case, but at least has the right to pursue it.
More recently, Hazelwood filed a motion for partial summary judgment that, if contractual liability for damages was established at trial, the liability of the Defendants would be solidary and would include liability for consequential damages stemming from Hazelwood's loss of use of the Property. Then, all of the Defendants filed motions for partial summary judgment seeking dismissal of Hazelwood's contractual claim for breach of the 1926 mineral lease. The trial court denied Hazelwood's motion for partial summary judgment. The trial court also rejected the Defendants' motions for partial summary judgment; however, on its own motion, the court struck Hazelwood's claim for breach of contract and its prayer for solidary liability pursuant to La.Code Civ.P. art. 964.
In his reasons for judgment, the trial judge gave the reasons that follow for using a motion to strike:
[T]he court also knows that there is a Motion for Summary Judgment on the issue of the defendants seeking a dismissal *97 of all contractual claims sought by Hazelwood. The court finds that counsel for plaintiff argues that there is a question of fact regarding contractual claims, and it's such a hazy area as to what is meant by contractual claims that that would not be an appropriatesummary judgment would not be an appropriate procedural tool for that either. And that's why the court makes reference to the fact that the appropriate the court feels the appropriate procedural tool would be the Motion to Strike in that particular regard, and the court is going to make a determination regarding the issue of contractual claims.
On the merits of the contractual claim, the trial judge stated:
The court finds that the plaintiff's remedies in this particular case sound in tort and not in contract. Though there are property rights involved and these property rights are affected by an oil, gas and mineral lease which the court acknowledges is a contract; however, the breach of the contract by parties to whom the plaintiff is not privy would allow the plaintiff to seek a remedy in tort, not in contract. Though there is a contract involved and there is an alleged breach of a contract, that breach is between parties of whom the plaintiff has no control over except to seek a tort remedy because the plaintiff has no mineral rights as he acknowledges or as Hazelwood acknowledges that they are strictly surface owners. And because they have no mineral rights involved, are not involved in the mineral contracts and subcontracts, they are not a party to these contract and they arethey cannot make claims for breach of those contracts because they are not parties or privy to those contracts.
They are, however, the property owner with surface rights; and, since plaintiff is a property owner with surface rights, the plaintiff does have a right to seek damages in tort for violations of the contract, mineral or otherwise, on its property.
With respect to the prayer for solidary liability, the trial judge stated:
[I]t is the ruling of the court that there is no solidary liability, and the court will grant a striking of the demand for solidary liability under the Motion to Strike Article 964, not summary judgment. The court feels that to make a ruling on a Motion for Partial Summary Judgment on the issue of whether or not defendants are liable for all damages or whether or not there is solidary liability, the court feels that there is an impermissive subdivision of the court's authority for summary judgment, that that would not decide the issues significant enough to make it worthwhileworth the court's while to grant the Motion for Summary Judgment. However, in order to give the parties guidance as to where they're going with this, the court will use the Motion to Strike on the issue of solidary liability, and the court will allow stricken the demand for solidary liability.
According to this reasoning, the trial judge ordered stricken from Hazelwood's petition all claims under the Louisiana Environmental Quality Act, all claims that the mineral lease had lapsed or had been rescinded, all claims ex contractu, and all claims that any liability of the defendants were solidary.
From this decision, Hazelwood has filed the instant appeal.

LAW AND ANALYSIS

ASSIGNMENTS OF ERROR
On appeal, Hazelwood asserts that the trial court erred in the following respects:

*98 1. by using a motion to strike to eliminate Hazelwood's claim for breach of the Wilson & Cochran Lease and to strike the prayer for solidary liability;
2. by finding that Hazelwood has no right to enforce the obligations running in favor of the owner of the surface contained in the Wilson & Cochran Lease because it is not the current mineral lessor; and
3. by prematurely determining that there can be no solidary liability of the Defendants without making any factual determinations.

MOTION TO STRIKE
In its first assignment of error, Hazelwood asserts that the trial court erred in striking Hazelwood's claim for breach of the Wilson & Cochran Lease and in striking its prayer for solidary liability on its own motion. A motion to strike is provided for in La.Code Civ.P. art. 964, which states, "[t]he court on motion of a party or on its own motion may at any time and after a hearing order stricken from any pleading any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are viewed with disfavor and are infrequently granted. Federal Deposit Ins. Corp. v. Niblo, 821 F.Supp. 441 (N.D.Tex.1993).[2] It is disfavored because striking a portion of a pleading is a drastic remedy, and because it is often sought by the movant simply as a dilatory tactic. Id. A motion to strike is only proper if it can be shown that the allegations being challenged are so unrelated to a plaintiff's claims as to be unworthy of any consideration and that their presence in the pleading would be prejudicial to the moving party. Id. "A motion to strike is not an authorized or proper way to procure the dismissal of a complaint or a cause of action." Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151, 1162 (La.1988); see also, Bellah v. State Farm Fire and Cas. Ins. Co., 546 So.2d 601 (La.App. 3 Cir. 1989) and Adams v. New Orleans Blood Bank, Inc., 343 So.2d 363 (La.App. 4 Cir. 1977). A court must deny a motion to strike if there is any question of fact or law. Federal Deposit Ins. Co., 821 F.Supp. 441.
Here, it is clear that the trial judge erred in his use of the motion to strike. In his partial judgment of October 24, 2000, the trial judge struck "all claims of the Petitioner ex contractu" and "all claims of the Petitioner that any liability of any Defendants is herein solidary." The contractual claim alleged by Hazelwood represents a cause of action, the resolution of which necessarily involves questions of law and fact. Likewise, the determination of solidary liability involves questions of law and fact. The Louisiana Code of Civil Procedure envisions the use of a motion to strike only in the instance of "insufficient demand or defense" or in the instance of the pleading containing "redundant, immaterial, impertinent, or scandalous matter." La.Code Civ.P. art. 964. A motion to strike is a means of cleaning up the pleadings, not a means of eliminating causes of actions or substantive allegations. Accordingly, we find that the trial court erred in using a motion to strike in order to eliminate Hazelwoods' ex contractu claim and to eliminate Hazelwoods' claim that the Defendants were solidarily liable.

*99 EX CONTRACTU
In its second assignment of error, Hazelwood urges that the trial court erred in finding that it has no right to enforce the obligations running in favor of the surface owner contained in the Wilson & Cochran Lease. In support of this assignment, Hazelwood makes two arguments. First, Hazelwood argues that it is a party to the lease as surface owner. Second, and in the alternative, Hazelwood argues that it is an intended third party beneficiary of a stipulation pour autrui.
Hazelwood asserts that it is a party to the lease because it is an assignee under the lease and a successor in interest to the rights of the surface owner in the 1926 lease. Therefore, Hazelwood asserts that as a successor and an assignee, it is entitled to enforce the provisions contained in the mineral lease stated in favor of the surface owner.
The Wilson & Cochran Lease states, in pertinent part:
The use of the surface of the land is granted only for the purposes hereof. Grantee shall be responsible for all damages caused by his operations.
All the provisions hereof shall extend to and bind the successors and assigns (in whole or, to that extent, in part) of the parties hereto, respectively: but no change in ownership of the land or part thereof, the minerals or interests therein, shall impose any additional burden on Grantee or impair the effectiveness of any payment made as above provided.
The Defendants, however, assert that the Edmundson Deed did not transfer the rights of a lessor under the mineral lease to Ernest E. Edmundson, Jr., Hazelwood's immediate predecessor in title. The Defendants assert that only the rights of lessor to the underground storage leases were transferred. The Defendants assert that all of the mineral rights were reserved to Mr. Wells, and the conveyance of the land to Mr. Edmundson was made subject to the mineral lease. The Edmundson Deed provides, in pertinent part:
The vendor herein [Mr. Wells] does hereby reserve for himself, his heirs and assigns all the oil, and gas ... being, lying and situated in, on and under the property herein sold, and this sale is made and accepted subject to the two leases hereinafter described and any and all oil, gas and mineral leases, servitudes, rights of way and surface leases which may affect said property and which are of record in the conveyance records of St. Landry Parish, Louisiana, cognizance of all of which is hereby taken.
Vendor also sells, assigns, transfers, conveys and delivers to purchaser [Mr. Ernest E. Edmundson, Jr., predecessor to Hazelwood] as of the date of this sale vendor's full interest in and to the following underground storage leases entered into by and between vendor as lessor and GULF REFINING COMPANY, or its successors or assigns as lessee, to-wit:
a. Lease dated May 2, 1955, and recorded June 9, 1955, as original Act No. 361315 in Conveyance Book Q, No. 10 at page 131, Records of St. Landry Parish, La.
b. Lease dated July 30, 1954, and recorded August 19, 1954, as Original Act No. 348718 in Conveyance Book H, No. 10 at page 460, Records of St. Landry Parish, Louisiana.
As is evidenced by the Edmundson Deed, Mr. Edmundson was not assigned any rights under the Wilson & Cochran Lease. Mr. Wells, the vendor, reserved the oil, gas, and mineral rights to himself. Accordingly, Mr. Edmundson could not transfer the rights as assignee under the *100 Wilson & Cochran Lease because those rights were reserved in Mr. Wells, his vendor. Accordingly, no such rights exist in Hazelwood as it could only receive what interest Mr. Edmundson held at the time of the exchange. Accordingly, Hazelwood does not have a right of action as a party to or assignee of the mineral lease. Therefore, we find this argument without merit.
Although Hazelwood is not a party to the lease, Hazelwood may be the beneficiary of a stipulation pour autrui. A party to a contract may stipulate a benefit for a third party beneficiary. La.Civ.Code art. 1978. Such stipulations on behalf of third persons are favored. Fairbanks v. Tulane Univ., 98-1228, (La.App. 4 Cir. 3/31/99); 731 So.2d 983. Although not a party to the contract, the third party beneficiary acquires rights with respect to the benefit conferred, including right to demand performance from the promisor.[3] La.Civ.Code art. 1981; Guidry v. Hedburg, 98-228 (La.App. 3 Cir. 11/4/98); 722 So.2d 1036. Our jurisprudence recognizes several factors which must be considered in determining whether a contract provides for a stipulation pour autrui. These factors are enumerated in Andrepont v. Acadia Drilling Co., 231 So.2d 347, 351, 255 La. 347 (1969) as:
(1) The existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the promisee (sic) will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended. See Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L.Rev. 18, 58 (1936).
In Andrepont, Nolton Andrepont, a share crop tenant, and the landowner entered into a verbal lease on a 35-acre tract. Id. Under this agreement, the landowner allowed Andrepont to farm soybeans on the land in return for twenty percent of his crop. Later, the land and mineral owners of the tract executed an oil and gas lease granting the lessee the right to enter the land and to explore and produce oil, gas, and other minerals. The printed form used as the oil and gas lease initially read, "The Lessee shall be responsible for all damages to timber and growing crops of the Lessor caused by Lessee's operations." Id. at 349. The words "to timber and growing crops of Lessor" were then deleted so that the lease read "The Lessee shall be responsible for all damages caused by Lessee's operations." Id.
Upon reviewing this language, the Louisiana Supreme Court found it to create a stipulation pour autrui.[4] In doing so, the *101 court noted, "[Andrepont] is seeking to enforce a benefit stipulated in his favor by the landowner lessor as a condition of a commutative contract between the landowner lessor and the oil and gas lessee. Defendants, as assignees of the oil and gas lessee, are, therefore, parties to the contract in which the stipulation is a condition...." Id. at 350. Therefore, the court reasoned that Andrepont, as beneficiary of the stipulation, had a direct right of action against the lessee to recover his damages.
The language in the Wilson & Cochran Lease is strikingly similar to that in the mineral lease at issue in Andrepont. The Wilson & Cochran Lease provides that "Grantee shall be responsible for all damages caused by his operations." Thus, we conclude that this language must be interpreted as providing a stipulation pour autrui in favor of Hazelwood. The fact that Hazelwood was not specifically named as a third party beneficiary in the mineral lease is of no consequence. Our jurisprudence recognizes that stipulations may be made in favor of undetermined persons. Id.; Fairbanks, 731 So.2d 983. In addition, the law does not require express acceptance or consent on the part of the beneficiary nor does it require a particular form of acceptance or consent. Andrepont, 231 So.2d 347. Because we find that the Wilson & Cochran Lease created a stipulation pour autrui in favor of Hazelwood, as surface owner, we find that the trial court erred in using a motion to strike to remove Hazelwood's ex contractu claims from the pleadings.

SOLIDARY LIABILITY
In its last assignment of error, Hazelwood asserts that the trial court erred by prematurely determining that there could be no solidary liability of the Defendants. "An obligation is solidary for the obligors when each obligor is liable for the whole performance." La.Civ.Code art. 1794. The solidarity of an obligation must not be presumed. La.Civ.Code art. 1796. A solidary obligation may arise from a clear expression of the parties' intent or from the law. Id. An obligation may be solidary even though the source of the obligation is different for each obligor. La.Civ.Code art. 1797; See Prevost v. Jobbers Oil Transport Co., 97-2514 (La.App. 1 Cir. 6/29/98); 713 So.2d 1208.
Prevost outlines the following prerequisites to a finding of solidary liability:
[F]irst, each obligor is obliged to the same thing; second, each obligor may be compelled for the whole payment, and finally, payment by one exonerates the other from its obligations to the creditor.
Id. at 1212.
The evidence present in the record indicates that the Defendants may be solidarity liable for the damages caused to Hazelwood's property. This solidarity may arise out of the provisions of the Wilson & Cochran Lease or out of the Defendants possible tort liability. However, as the record is incomplete at this stage of the proceeding, it is impossible for us to determine whether a finding of solidary liability on the part of the Defendants would be proper. Accordingly, we must remand this case to the trial court for further proceedings.

DECREE
Based on the foregoing discussion, we reverse the decision of the trial court, and remand for further proceedings consistent with this opinion.
*102 REVERSED AND REMANDED.
SULLIVAN, J., concurs in the result. However, I believe plaintiff did acquire rights under the lease as the surface owner, including damages sustained since the sale.
NOTES
[1] Chevron is the successor in interest to Gulf Refining Company.
[2] Although the decisions of intermediate federal courts are not binding on this court, they are persuasive. See State v. White, 321 So.2d 491(La.1975). When an article of the Louisiana Code of Civil Procedure is based on a federal rule, decisions of the federal courts may be used for guidance. Scott v. Hospital Serv. Dist. No. 1, 496 So.2d 270 (La.1986).
[3] "The direct right of the beneficiary to demand performance has been consistently recognized by the Louisiana courts since Mayor v. Bailey, 5 Mart. (O.S.) 321 (1818). The right of the stipulator to do so is a natural consequence of this basic principle." La.Civ.Code art. 1981 (comment).
[4] See also Hargroder v. Columbia Gulf Transmission Co., 290 So.2d 874, 876 (La. 1974)(found that a stipulation pour autrui was created by language in servitude agreement stating, "agrees to pay such damages which may arise to growing crops, timber, or fences from the construction of the (pipeline)"); Compare Broussard v. Northcott Exploration Co., Inc., 481 So.2d 125, 127 (La.1986)(found no stipulation pour autrui in the damage clause of a mineral lease which read, "The Lessee shall be responsible for all surface damages of the Lessor (emphasis added) caused by the Lessee's operations.")