STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-628


JOHN C. DUCK

VERSUS

HUNT OIL COMPANY, ET AL.


**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 45,505
HONORABLE GLEN W. STRONG, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of John D. Saunders, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


REVERSED AND REMANDED.

James J. Davidson, III
Christopher J. Piasecki
Davidson, Meaux, Sonnier,
McElligott, Fontenot, Gideon & Edwards
Post Office Drawer 2908
Lafayette, Louisiana 70502
(337) 237-1660
Counsel for Plaintiff/Appellant:
    John C. Duck

**V. Russell Purvis**
**Smith, Taliaferro & Purvis**
**Post Office Box 298**
**Jonesville, Louisiana  71343**
**(318) 339-8526**
**Counsel for Plaintiff/Appellant:**
        **John C. Duck**

**J. Michael Veron**
**J. Rock Palermo**
**Alonzo P. Wilson**
**Veron, Bice, Palermo & Wilson, LLC**
**Post Office Box 2125**
**Lake Charles, Louisiana  70602-2125**
**(337) 310-1600**
**Counsel for Plaintiff/Appellant:**
        **John C. Duck**

**Albert M. Hand, Jr.**
**Scott L. Zimmer**
**James R. Sterritt**
**Ryan C. Williams**
**Cook, Yancy, King & Galloway**
**Post Office Box 22260**
**Shreveport, Louisiana  71120-2260**
**(318) 221-6277**
**Counsel for Defendant/Appellee:**
        **Hunt Oil Company**

**Alex L. Andrus, III**
**James T. Guglielmo**
**Guglielmo, Lopez, Tuttle,**
**Hunter & Jarrell, L.L.P.**
**Post Office Drawer 1329**
**Opelousas, Louisiana  70571-1329**
**(337) 948-8201**
**Counsel for Defendant/Appellee:**
        **Harvest Petroleum, Inc.**

**Leonard L. Kilgore, III**
**Esteban Herrera, Jr.**
**L. Victor Gregoire**
**Melissa M. Cresson**
**Richard D. McConnell, Jr.**
**Victor J. Suane, Jr.**
**Kean Miller LLP**
**Post Office Box 3513**
**Baton Rouge, Louisiana  70821-3513**
**(225) 387-0999**
**Counsel for Defendant/Appellee:**
        **Chevron U.S.A., Inc.**

**Michael R. Phillips**
**Louis M. Grossman**
**Kean Miller LLP**
**909 Poydras Street, Suite 1400**
**New Orleans, Louisiana  70112**
**(504) 585-3050**
**Counsel for Defendant/Appellee:**
     **Chevron U.S.A., Inc.**

**John P. Wolff, III**
**Nancy B. Gilbert**
**Stephen M. Whitlow**
**Martin E. Golden**
**Keogh, Cox & Wilson, Ltd.**
**Post Office Box 1151**
**Baton Rouge, Louisiana  70821**
**(225) 383-3796**
**Counsel for Defendant/Appellee:**
     **David New Operating Co., Inc.**

**Morgan J. Wells, Jr.**
**Evan J. Godofsky**
**Larzelere Picou Wells Simpson Lonero, LLC**
**3850 N. Causeway Boulevard, Suite 1100**
**Metairie, Louisiana 70002**
**(504) 834-6500**
**Counsel for Defendant/Appellee:**
     **Radzewicz Operating Corporation**

**James C. McMichael, Jr.**
**McMichael, Medlin, D'Anna, Wedgeworth & Lafargue, L.L.C.**
**Post Office Box 72**
**Shreveport, Louisiana 71101-0072**
**(318) 221-1004**
**Counsel for Defendant/Appellee:**
     **Seagull Operating Co., Inc.**

**Paul M. Adkins**
**Blanchard, Walker, O'Quin & Roberts**
**Post Office Drawer 1126**
**Shreveport, Louisiana  71163-1126**
**(318) 221-6858**
**Counsel for Defendant/Appellee:**
     **Pinnacle Operating Co., Inc.**

**KEATY, Judge.**

Property owner appeals the trial court's judgment granting motions for summary judgment and exceptions of no cause of action and no right of action in favor of the defendants. For the following reasons, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

The facts are not in dispute. John C. Duck acquired a half interest in a 5.2 acre tract of property located in Concordia Parish, Louisiana, on July 1, 2004.[1] The act of sale did not contain an express transfer or assignment of any rights from the former owner of the property. In April of 2010, after a well was drilled on the property, Duck discovered that the well only produced saltwater. On May 20, 2010, Duck filed a petition for damages against various defendants, seeking to recover the cost of ridding his property of contamination allegedly caused by the defendants' oilfield operations pursuant to mineral leases that had been entered into in 1950 and 1951. The first mineral lease was executed by Charles W. Burrill to Gulf Refining Company (the Burrill Lease) on September 30, 1950, and expired by its own terms in 1991. It covered eighty acres, which included the 5.2 acre tract subsequently acquired by Duck. The second mineral lease was executed by C.F. Farrar to Gulf Refining Company (the Farrar lease) on February 21, 1951, and did not cover the property that Duck subsequently acquired. In response to the petition, some of the defendants filed exceptions of no right of action and/or exceptions of no cause of action and motions for summary judgment, asserting that Duck could not claim damages for contamination caused by operations that took place prior to

---

[1] Duck was married when he bought the property in 2004. When he and his wife later divorced, Duck acquired his former wife's interest in the property by quitclaim deed dated August 14, 2006.

his purchase of the property. The following motions and exceptions were addressed at a January 10, 2013 contradictory hearing:

1. Motion for Summary Judgment filed by Hunt Oil Company,

2. Motion for Summary Judgment filed by Chevron U.S.A., Inc.,

3. Motion for Summary Judgment filed by Pinnacle Operating Company, Inc.,

4. Motion for Summary Judgment filed by Seagull Operating Company, Inc.,

5. Motion for Summary Judgment and Exception of No Cause of Action and No Right of Action filed by Radzewicz Operating Corporation and Radzewicz Exploration and Drilling Company,

6. Exception of No Right of Action filed by David New Operating Co., Inc., and

7. Exception of No Cause of Action and No Right of Action filed by Harvest Petroleum, Incorporated.

At the close of the hearing, the trial court granted the motions and exceptions in open court and dismissed Duck's claims against those defendants with prejudice and at his costs.[2] Written judgment was signed on January 24, 2013. Duck now appeals, alleging that the trial court erred: 1) in applying the subsequent purchaser theory described in *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.*, 10-2267, 10-2272, 10-2275, 10-2279, 10-2289 (La. 10/25/11), 79 So.3d 246, to bar his claims; and 2) in finding that the oil and gas leases affecting the property did not constitute a stipulation pour autrui in his favor.

## DISCUSSION

Generally, an action can only be brought by a person having a real and actual interest which he asserts. La.Code Civ. Proc. art. 681. The exception of no right of action is designed to test whether the plaintiff

---

[2] Although other defendants were named in Duck's original petition, when we refer to the defendants in this opinion, we are only referring to those defendants in whose favor judgment was rendered on January 24, 2013.

2

has a real and actual interest in the action. La.Code Civ. Proc. art. 927(5). The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation.

. . . [E]vidence is admissible on the trial of an exception of no right of action to "support or controvert any of the objections pleaded, when the grounds therefor do not appear from the petition." La.Code Civ. Proc. art. 931.

*Indus. Cos., Inc. v. Durbin*, 02-665, pp. 11-12 (La. 1/28/03), 837 So.2d 1207, 1216 (citations omitted).

Summary judgment "is designed to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." *Id.* Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, . . . show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

"The standard of review for both the motion for summary judgment and the exception of no right of action/no cause of action is *de novo*." *Richard v. Apache Corp.*, 12-441, p. 3 (La.App. 3 Cir. 3/20/13), 111 So.3d 1156, 1158, *writs denied*, 13-865, 13-869 (La. 6/21/13), 118 So.3d 416.

At the start of the January 10, 2013 hearing, the parties agreed that through the exceptions and motions set for hearing that day, the defendants were asserting the subsequent purchaser defense to all of Duck's claims, whether they sounded in tort, contract/lease, or in the nature of violation of the mineral code. Likewise, when the trial court granted the exceptions and motions at the close of the hearing,

3

it did so as to all of them without specifically referring to any individual exception, motion, or defendant.

Duck contends that the defendants are liable to him because their oilfield operations resulted in contamination to the property that he now owns, notwithstanding the fact that he did not own the property when the damage was incurred and/or the fact that he was not assigned any rights to recover for any pre-existing property damage claims in the act of sale in which he acquired the property. In support of his argument, Duck relies on the Mineral Code,[3] which provides that mineral rights are real rights and that the mineral lease is one of the basic mineral rights that can be created by a landowner. *See* La.R.S. 31:16. Quoting *Hoover Tree Farm, L.L.C. v. Goodrich Petroleum Co., L.L.C.*, 46,153, p. 11 (La.App. 2 Cir. 3/23/11), 63 So.3d 159, 166, *writs denied*, 11-1225, 11-1236 (La. 9/23/11), 69 So.3d 1161, 1162, Duck submits that the "obligations of the lessee that are created in a mineral lease are real obligations and not merely personal." Moreover, Duck points out that according to La.Civ.Code art. 1764, Revision Comments–1984 (b) and (c), "[a] real obligation attaches to a thing" and "passes to a subsequent acquirer of the thing to which it is attached without need of a stipulation to that effect." Focusing on the real rights versus personal rights distinction made by the *Eagle Pipe* court, Duck contends that the trial court erred in applying the subsequent purchaser theory to bar his claims. Duck further submits that because the Burrill and Farrar Leases created real rights with correlative real obligations, those real rights attached to the land that he now owns without the need of an assignment of those rights. In addition, Duck claims that

---

[3] Louisiana Revised Statutes 31:1 provides that Title 31 "shall be known as the Louisiana Mineral Code and that the provisions within it "may be referred to or cited either as Articles of the Mineral Code or as Sections of the Revised Statutes."

the Burrill and Farrar Leases created stipulations pour autrui in his favor thereby giving him a direct contractual right of action against the defendants to recover damages for the cost of ridding his property of contamination allegedly caused by their oilfield operations.

## *Subsequent Purchaser Theory*

In *Eagle Pipe*, the plaintiff, a purchaser of land who discovered radioactive material on property it had acquired two decades earlier, filed suit against the former landowners and the oil and trucking companies that had leased the property and were allegedly responsible for the contamination. According to the petition, during a seven-year period before the plaintiff bought the land, the former landowners leased the property to Union Pipe and Supply, Inc., which operated a pipe yard/pipe cleaning facility on the property. The petition further alleged that Union Pipe purchased used oilfield tubing from the oil company defendants which it then cleaned and sold. The tubing was allegedly transported by the trucking company defendants from the oil companies to Union Pipe's pipe yard. The plaintiff asserted a claim for redhibition against the former landowners. It asserted causes of action for breach of contract, negligence, strict liability, fraud, and conspiracy against the remaining defendants.

The defendants filed peremptory exceptions of no right of action asserting that the plaintiff had no right to assert claims for damages to the property which occurred before it acquired the land. The trial court sustained the exceptions and dismissed the plaintiff's claims, and it denied the plaintiff's motion for new trial. On appeal, the fourth circuit initially affirmed the trial court's ruling, but on rehearing, a five-judge panel reversed the trial court's sustaining of the exceptions

5

of no right of action. *See Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.*, 09-298 (La.App. 4 Cir. 2/10/10), 47 So.3d 428.

The Louisiana Supreme Court granted certiorari and reversed, explaining:

> [I]njury to property must be understood as damage to the real rights in the property. A tortfeasor who causes injury or damage to a real right in property owes an obligation to the owner of the real right. This relationship arises as a matter of law and provides to the owner of the real right a personal right to sue the tortfeasor for damages. In the absence of an assignment or subrogation of this personal right, a subsequent purchaser of the property cannot recover from a third party for property damage inflicted prior to the sale.

*Eagle Pipe*, 79 So.3d at 279. After examining the act of sale in which the plaintiff acquired the property, the supreme court found "no express assignment or subrogation of the former property owners' personal right to sue for damage." *Id.* at 281. The supreme court was careful to note, however, that it "express[ed] no opinion as to the applicability of [its] holding to fact situations involving mineral leases or obligations arising out of the Mineral Code." *Id.* at n.80.

The lease at issue in *Eagle Pipe* was a surface lease whereas the leases at issue in the matter before us are mineral leases. By its own terms, *Eagle Pipe* does not apply to situations involving mineral leases. Thus, the trial court erred in applying the subsequent purchaser theory recognized in *Eagle Pipe* to bar the claims that Duck asserts in this matter as those claims arise under mineral leases.

### *Stipulation Pour Autrui*

Article 16 of the Mineral Code provides that:

> The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. This enumeration does not exclude the creation of other mineral rights by a landowner. Mineral rights are real rights and are subject either to the prescription of nonuse for ten years or to special rules of law governing the term of their existence.

6

Citing Article 16, Duck maintains that because mineral leases are classified as real rights, those rights, along with their correlative real obligations, automatically attached to the land that he now owns without the need for any assignment of those rights to him. We disagree.

"Although, Louisiana R.S. 31:16 provides that a mineral lease, as a mineral right, is a real right, a review of the Mineral Code and the jurisprudence shows that it is not purely a real right that automatically attaches to the property." *Frank C. Minvielle, L.L.C. v. IMC Global Operations, Inc.,* 380 F.Supp.2d 755, 774 (W.D.La.2004).

> Strictly speaking, the mineral lease creates a kind of servitude called a "limited personal servitude." *See* 3 A.N. Yiannopoulis, Louisiana Civil Law Treatise: Personal Servitudes § 223, at 450 (3d ed.1989). "Limited personal servitudes are real rights that confer on a person limited advantages of use or enjoyment over an immovable[, *i.e.,* realty,] belonging to another person." *Id.* at 448-49.

*Id.* at 774-75 (quoting *Sketoe v. Exxon Co.,* 188 F.3d 596, 601 (5th Cir.1999). "Thus, it is in the nature of a limited personal servitude that the mineral lease is a real right." *Id.* at 775. "Although a right of use, i.e., a personal servitude, is a real right, it is one granted in favor of a person rather than an estate, and therefore it does not pass with the property upon sale of the property." *Id.* Given the foregoing, the *Minvielle* court concluded that in order to file suit based upon an expired mineral lease, the subsequent landowner needed to have either "privity of contract, assignment of rights, or be the beneficiary of a stipulation *pour autri.*" *Id.* at 776.

Based on the reasoning in *Minvielle*, we conclude that the right to sue the defendants for damages under the Burrill and Farrar Leases did not automatically pass to Duck when he acquired the land at issue. Further, because Duck was not a

party to those leases and because he was not assigned any such rights when he purchased the land at issue, we must now determine whether the trial court erred in finding that the Burrill and Farrar Leases did not contain stipulations pour autrui in his favor.

Louisiana Civil Code Article 1978 provides that "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." Duck claims that the two mineral leases under which the defendants historically conducted oilfield operations on the property he now owns, i.e., the Burrill Lease, or property adjacent to the property that he now owns, i.e., the Farrar Lease, each contained damage clauses intended for the benefit of third parties such as himself who later acquire the property after the expiration of the lease and thereafter discover underground contamination that has destroyed his fresh water supply. The damage clauses contained in section eight of the Burrill and Farrar Leases provided, in pertinent part, as follows (emphasis added):

> No well shall be drilled nearer than two hundred (200) feet to the house or barn on said land without the written consent of Lessor, and **Lessee shall be responsible for all damages caused by Lessee's operations** other than damages necessarily caused by the exercise of the rights herein granted. No injections of fluids herein authorized shall be made in fresh water strata which are capable of furnishing Lessor fresh water for irrigation, domestic or stock uses.

The *Eagle Pipe* court recognized that a subsequent purchaser could recover for damages done to the property if the contract between the former landowner and the oil and trucking companies, who allegedly damaged the property that they leased, contained a stipulation to benefit a third party, or a stipulation pour autrui, in his favor. After noting that such a stipulation pour autrui cannot be presumed, the supreme court directed that a party claiming the benefit of such a contract had the burden of proving that: "1) the stipulation for a third party is manifestly clear;

8

2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Eagle Pipe*, 79 So.3d at 283 (quoting *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 05-2364 (La. 10/15/06), 939 So.2d 1206). Since the issue arose in the context of an exception of no right of action, the supreme court accepted as true the allegations made in the plaintiff's petition as to elements one and two. As to element three, however, the supreme court found that any third-party benefit contained in the contract was intended "for the employees and subcontractors of the pipeyards entering into these contracts with the oil companies, and not for a subsequent purchaser of the property." *Id.* Moreover, the supreme court found that "any benefit that [the subsequent purchaser] derived from these provisions of the contracts . . . would be incidental to the contracts themselves, inasmuch as any person coming into contact with land has an interest in the land not being contaminated." *Id.* Thus, the supreme court found that the contracts between Union Pipe and its customers did not include provisions for third-party beneficiaries such as the plaintiff.

In *LeJeune Brothers, Inc. v. Goodrich Petroleum Co., L.L.C.*, 06-1557 (La.App. 3 Cir. 11/28/07), 981 So.2d 23, *writ denied*, 08-298 (La. 4/4/08), 978 So.2d 327, a case that was decided before *Eagle Pipe*, this court considered whether a property owner was a third-party beneficiary to a mineral lease entered into between his predecessor in interest and a well operator so as to maintain a contract action against the well operator for damages to the property that resulted from the well operations. The damage clause in *LeJeune* had been modified from the version contained in the original lease. The original damage clause provided that "The Lessee shall be responsible for all damages to timber and growing crops

9

of Lessor caused by Lessee's operations." *Id.* at 29. The clause was modified to omit the words "timber and growing crops of" so that the final damage clause read, "The Lessee shall be responsible for all damages to Lessor caused by Lessee's operations." We concluded that damages permitted by the lease "were limited to the damages suffered by the Lessor," and thus found no error in the trial court's conclusion that the plaintiff was not a third-party beneficiary of the lease. *Id.* In doing so, we distinguished *Hazelwood Farm, Inc. v. Liberty Oil and Gas Corp.*, 02-266 (La.App. 3 Cir. 4/2/03), 844 So.2d 380, *writs denied*, 03-1585, 03-1624 (La. 10/31/03), 857 So.2d 476 and *Andrepont v. Acadia Drilling Co.*, 255 La. 347, 231 So.2d 347 (1969), cases where stipulations pour autrui were found to exist because the damage clauses at issue in those cases did not restrict liability to just the damages suffered by the lessors. We believe that a review of the facts in those cases is relevant to the issue now before us.

In *Hazelwood Farm, Inc. v. Liberty Oil and Gas Corp.,* 01-345 (La.App. 3 Cir. 6/20/01), 790 So.2d 93, the owner of a property which had been the location of oil and gas operations under a 1926 lease and which was still active at the time suit was filed in 1997 sought tort and contract damages from the alleged contamination to both the surface of the property and the underground aquifer. The 1926 lease provided that "Grantee shall be responsible for all damages caused by his operations." *Id.* at 101. All of the defendants had, at some point, operated wells pursuant to the 1926 lease. When the plaintiff bought the property, his ancestor in title reserved the mineral rights. As a result, this court held that the plaintiff did "not have a right of action as a party to or assignee of the mineral lease." *Id.* at 100. Nevertheless, we went on to interpret the 1926 as providing a stipulation pour autrui in favor of the plaintiff. In doing so, we noted that "[t]he fact that

10

Hazelwood was not specifically named as a third-party beneficiary in the mineral lease is of no consequence" because "[o]ur jurisprudence recognizes that stipulations may be made in favor of undetermined persons." *Id.* at 101. Based on the stipulation pour autrui, we concluded that the trial court erred in using a motion to strike to dispose of the plaintiff's contract claims. After the case was remanded to the trial court on other grounds, the matter went to trial and the defendants were cast in judgment. On appeal to this court, the defendants challenged our prior ruling that the 1926 lease created a stipulation pour autrui in favor of the plaintiff. We declined to revisit the issue on the basis that our earlier ruling was the law of the case and not clearly erroneous. *Hazelwood*, 844 So.2d 380.

*Andrepont* was a suit by a share crop tenant farmer who had entered into a verbal surface lease with the landowner, who later executed an oil and gas lease on the property. The named defendants were the mineral lessees whom the plaintiff alleged had damaged his crops through their operations.

> Paragraph 8 of the [mineral] lease originally read, "The lessee shall be responsible for all damages to timber and growing crops of lessor caused by lessee's operations." However, the words "to timber and growing crops of lessor" were struck out. Thus the lease provided: "The lessee shall be responsible for all damages caused by lessee's operations."

*Andrepont*, 231 So.2d at 348. In our original opinion, we failed to consider the farmer's argument that the mineral lease created a stipulation pour autrui in his favor, and instead held that the farmer could not recover from the defendants since his oral lease with the property owner was unrecorded and the defendants were third persons. On rehearing, however, we recognized that the mineral lease did create a stipulation pour autrui and that as a beneficiary of that stipulation, the

11

farmer had "a direct right of action against the oil and gas lessee to recover for his damages." *Id.* at 350.

The trial court in the instant matter found that the language in the Burrill and Farrar Leases does not provide Duck with a third-party beneficiary claim. After comparing the damage clause language in the Burrill and Farrar Leases, i.e., "Lessee shall be responsible for all damages caused by Lessee's operations," to the damages clause of the leases in *LeJeune*, *Hazelwood*, and *Andrepont*, we conclude that the Burrill and Farrar Leases do contain a stipulation pour autrui for the benefit of third parties. Like the damage clauses in *Hazelwood* and *Andrepont*, the damage clauses at issue herein do not restrict liability to only the damages suffered by the lessors. Thus, the trial court erred in finding that Duck is not a third-party beneficiary of the Burrill and Farrar Leases. Accordingly, this matter is remanded to the trial court for further proceedings.

## DECREE

For the foregoing reasons, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion. All costs of this appeal are assessed against the defendants.

**REVERSED AND REMANDED.**